**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2220-WJM

TRINNIE M. SINGLETARY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Trinnie Singletary ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. This decision affirmed a prior order by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I. BACKGROUND

Plaintiff was born on December 25, 1983, and was 26 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 10) at 21.) Plaintiff has at least a high school education and has prior work experience as a fast food services manager. (*Id.*)

Plaintiff filed an application for disability insurance benefits on February 15, 2011, alleging that she was disabled due to numerous physical and mental impairments. (R. at 13, 15.) Plaintiff's application was denied and, upon a request for a hearing, her claims were heard by Administrative Law Judge ("ALJ") E. William Shaffer on September 13, 2012, and in supplemental hearings on January 24, 2013, and January 30, 2013. (R. at 13.) Plaintiff, her husband, two impartial medical experts, and an impartial vocational expert testified at the hearings. (*Id.*)

On February 12, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] (*Id.*) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 6, 2010, the alleged onset date. (R. at 15.) At step two, he found that Plaintiff suffered from the following severe impairments: "mild left chondromalacia patella; upper-back myofascial pain syndrome; migraine headaches; adjustment disorder; [and] anxiety not otherwise specified". (*Id.*) The ALJ did not find Plaintiff's plantar fasciitis, sleep apnea, possible carpal tunnel syndrome, or any other impairment to be a severe impairment. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet any of the impairments or combination of impairments listed in the social security regulations. (R. at 16.) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

had the RFC to perform "light" work as defined by the regulations, but with the following limitations:

> [Plaintiff] can stand/walk and sit each six hours in an eight-hour workday; can push and pull with upper and lower extremities at the light exertional level, but is limited to frequent pushing and pulling with the left lower extremity; cannot climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; can occasionally stoop, crouch, crawl and kneel; should avoid concentrated exposure to unprotected heights and unprotected major manufacturing machinery; and can perform work at the unskilled level, with decreased interpersonal contact with co-workers, supervisors and the general public (*i.e.*, the claimant can function from one-third to two-thirds of the time with interaction with these classes of people).

(R. at 18.)

Given this RFC, at step four the ALJ found that Plaintiff could not perform her past relevant work as a fast food services manager. (R. at 21.) However, at step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (R. at 22.) Specifically, the ALJ found that Plaintiff could work as a housekeeping cleaner, production assembler, or printed circuit board assembler. (*Id.*) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and was not entitled to benefits. (R. at 23.) The Appeals Council denied Plaintiff's request for review. (R. at 1.) Thus, the ALJ's February 12, 2013 decision is the final administrative action for purposes of review.

Plaintiff filed this action on August 19, 2013, seeking reversal of the ALJ's decision. (ECF No. 1.) Plaintiff's Opening Brief was filed on May 28, 2014 (ECF No. 15), and the Commissioner's Response Brief was filed on June 24, 2014 (ECF No. 17.) Plaintiff filed no Reply.

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

On appeal, Plaintiff raises three issues: (1) the ALJ erred in failing to apply the "treating physician rule" and improperly weighed the medical evidence; (2) the ALJ erred in failing to assign restrictions in the RFC relating to Plaintiff's migraine headaches; and (3) the ALJ did not properly assess the combined effects of Plaintiff's mental and physical impairments in formulating the RFC. (ECF No. 15 at 1.) The Court will address each of Plaintiff's arguments in turn.

**A.    Medical Opinions**

Plaintiff contends that the ALJ erred in giving substantial weight to the opinion of Dr.

Edith Winkler, a non-examining physician who testified at the hearing, despite contrary records from Plaintiff's treating physicians. (ECF No. 15 at 16-18.) Specifically, Plaintiff contends that the ALJ failed to correctly apply the "treating physician rule". (*Id.* at 16.)

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d). *See id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted). The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301(quotation marks and brackets omitted).

"If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)). "When considering the weight of non-treating sources, the ALJ must

determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4 (D. Colo. Mar. 30, 2012).

The analysis is slightly different for the opinion of a treating physician, which is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (July 2, 1996)). A finding that a treating doctor's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4. If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

Here, Plaintiff contests the ALJ's decision to give substantial weight to the opinion of Dr. Winkler, who was not a treating physician. (ECF No. 15 at 16-18.) Plaintiff

contends that in giving such weight to a non-treating physician, the ALJ failed to correctly apply the "treating physician rule". (ECF No. 15 at 16.) This argument implies that, pursuant to the guiding doctrine, a non-treating physician's opinion is presumptively due little weight. This interpretation misconstrues the "treating physician rule", and is directly contradicted by the regulations and case law. *See, e.g.*, *Watkins*, 350 F.3d at 1300; *Hamlin*, 365 F.3d at 1215. Instead of requiring that non-treating sources be given little weight, the "treating physician rule" establishes the presumptive weight due to a treating physician's opinion of a claimant's disability, and sets forth the requirements to rebut that presumption. *See* SSR 96-2p, 1996 WL 374188, at *4.

In focusing her argument on the significant weight granted to Dr. Winkler's opinion, Plaintiff fails to identify any opinion of a treating physician that was improperly weighed or discounted pursuant to a misapplication of the "treating physician rule". In fact, the only treating source that Plaintiff explicitly identifies is Dr. Charles D. Amos, who treated Plaintiff's mental impairments. (ECF No. 15 at 17.) Plaintiff cites generally to Dr. Amos's treatment records and argues that the ALJ "made very few findings" as to Plaintiff's treating sources, but fails to point to any opinion that was improperly ignored. (*Id.*) Furthermore, Dr. Amos's mental health treatment records have no bearing on the ALJ's decision to give substantial weight to Dr. Winkler's opinion, as Dr. Winkler opined only on Plaintiff's physical impairments. (*See* R. at 18; *see also* R. at 64 (testimony by Dr. Winkler that as to Plaintiff's "ongoing psychological problems . . . I'd defer to mental health experts regarding diagnosis and severity").)

The only treatment records Plaintiff specifically cites in support of her argument are those pertaining to Plaintiff's plantar fasciitis and carpal tunnel syndrome. (ECF No. 15 at

17-18.) Plaintiff contends that the ALJ should not have relied on Dr. Winkler's opinion that these impairments were not confirmed in the record, because the medical records showed that Plaintiff received continuing treatment for both plantar fasciitis and carpal tunnel syndrome. (*Id.*) However, the evidence Plaintiff cites is not uncontradicted. Rather, the record indicates that the objective tests of such impairments were either negative, equivocal, or absent, and that treatment of Plaintiff's wrist and foot impairments was generally successful to control her symptoms. (*See* R. at 507-08, 724, 781, 786, 821-22, 854-56.) Furthermore, in 2011, Plaintiff's own report of her functional impairments did not describe any negative affect on her ability to use her hands. (R. at 343.) Because "more than a scintilla" of evidence exists to support Dr. Winkler's opinions as to Plaintiff's wrist and foot impairments, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's decision to adopt those opinions was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084.

Plaintiff also challenges the ALJ's evaluation of Dr. Winkler's opinion in general, contending that it was improperly weighed because the ALJ's decision only discussed one of the six required factors. (ECF No. 15 at 17.) However, the case law is clear that an ALJ need not explicitly discuss all six factors, and need only be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue,* 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300). Here, the ALJ made clear that Dr. Winkler's opinion merited substantial weight because it was generally consistent with the findings of consultative examiner Dr. Jaspal Singh, which in turn were consistent with the physical examinations of Plaintiff in the record, and because it relied on objective medical evidence

in the record. (R. at 18-19.) This explicitly refers to two of the six factors, namely the degree to which the physician's opinion is supported by relevant evidence, and the consistency between the opinion and the record as a whole. *See Watkins*, 350 F.3d at 1300. There is no indication that any of the other factors were relevant to Dr. Winkler's opinion, as she was not a treating physician. *See id.*

On this record, the Court finds that the ALJ applied the correct legal standard and considered the relevant factors as required by the regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ's decision here satisfies the requirement to explain the weight given to a non-treating physician's opinion on which the ALJ relies. *Hamlin*, 365 F.3d at 1215. Further, as there is substantial evidence in the medical records to support Dr. Winkler's opinion, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621. Therefore, the Court finds no error in the ALJ's weighing of the physicians' medical opinions.

**B.     Migraine Headaches**

Plaintiff next contends that the ALJ erred in failing to assign any restrictions in the RFC to Plaintiff's impairment of migraine headaches. (ECF No. 15 at 19-21.) Plaintiff challenges the ALJ's reliance on Dr. Winkler's testimony that the absence of nutritional counseling, the continued use of estrogen-containing compounds, and the limited need to adjust medications indicated that Plaintiff's migraine headaches were not serious. (*Id.*)

Plaintiff's argument is nonsensical and misstates the ALJ's decision. Far from discounting or ignoring Plaintiff's migraine headaches, the ALJ found that they constituted a severe impairment, and explicitly assigned restrictions in the RFC as a result of the

migraine headaches. *See* 20 C.F.R. § 404.1520(c) (claimant's impairment is severe if it "significantly limits [her] physical or mental ability to do basic work activities"); (R. at 14, 18, 20 ("Because of the claimant's migraines, she should avoid concentrated exposure to unprotected heights and unprotected major manufacturing machinery.").) Plaintiff cites no evidence in the record indicating that further or different restrictions should have been assigned, instead devoting her argument to challenging various parts of Dr. Winkler's opinion. (*See* ECF No. 15 at 19-20.) However, even if the Court were to find that Dr. Winkler's opinion as to Plaintiff's migraine headaches was not supported by substantial evidence, there is no indication that the ALJ ignored the impairment in reliance on that opinion. Plaintiff's misconstrual of the ALJ's decision results in her failure to identify any reversible error. Thus, this argument provides no basis for reversal.

C.  **Combined Effects of Impairments**

Finally, Plaintiff argues that the ALJ failed to properly consider the combined effects of all of her severe and non-severe impairments, in that the RFC contained no restrictions related to Plaintiff's hand and foot impairments. (ECF No. 15 at 21-24.)

An ALJ is required to consider all of a claimant's impairments, both those that are severe and those that are not, when formulating the RFC. 20 C.F.R. § 404.1545(1)(2). As with Plaintiff's other arguments, she again devotes the bulk of her argument to attacking Dr. Winkler's opinion. Plaintiff contends that the ALJ should not have relied on Dr. Winkler's opinion of Plaintiff's hand and foot impairments, because it was based solely on the lack of objective tests confirming those impairments, despite the existence of supporting treatment records. (ECF No. 15 at 21-23.) Plaintiff cites *Nieto v. Heckler*, 750

10

F.2d 59 (10th Cir. 1984), for the proposition that the absence of certain objective medical tests does not negate extensive treatment notes and physicians' evaluations supporting those impairments.  (*Id.*)

In *Nieto*, the Tenth Circuit held that the Appeals Council erred in reversing an ALJ's decision to award benefits solely on the basis of the absence of objective test results. *Nieto*, 750 F.2d at 61-62.  The ALJ found the claimant's complaints of pain to be credible, none of the examining physicians rejected her complaints as unfounded, and the evidence as a whole supported the physicians' findings of disabling pain.  *Id.* at 62.  Here, in contrast, the ALJ found that Plaintiff's complaints of the intensity and limiting effects of her symptoms were "not entirely credible", and as noted above, there is medical evidence in the record supporting a finding that Plaintiff's hand and foot impairments were successfully controlled and did not cause significant functional limitations.  (*See* R. at 18, 343, 507-08, 781.)  Thus, *Nieto* is inapposite, as the ALJ's decision in the instant case is not contradicted by the overwhelming weight of the evidence of record.

The Court finds "more than a scintilla" of evidence to support the ALJ's evaluation of the effects of Plaintiff's hand and foot impairments in formulating the RFC, which constitutes substantial evidence to support his decision.  *Lax*, 489 F.3d at 1084.  Plaintiff's argument asks the Court to reweigh the evidence, which it is not empowered to do. *Salazar*, 468 F.3d at 621.  The Court finds that the ALJ applied the correct legal standards and his conclusions were supported by substantial evidence in the record.  Accordingly, Plaintiff has failed to identify any reversible error.

### IV.   CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 31st day of October, 2014.

BY THE COURT:

William J. Martínez
United States District Judge